# EXHIBIT 8

Case 3:25-cv-01132-JKM   Document 19-10   Filed 01/16/26   Page 2 of 8

Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)
2020 WL 14028040

2020 WL 14028040
Only the Westlaw citation is currently available.
United States District Court, M.D. Pennsylvania.

Robert D. KLINE, Plaintiff,
v.
ADVANCED INS. UNDERWRITERS, LLP, Jason Wyman, and Marilyn E. Morillo, Defendants.

CIVIL ACTION NO. 1:19-CV-00437
|
Signed June 23, 2020

**Attorneys and Law Firms**

Robert D. Kline, McClure, PA, Pro Se.

Leonard Fornella, Babst, Calland, Clements & Zomnir, P.C., Pittsburgh, PA, Timothy Allan Schoonover, Babst, Calland, Clements & Zomnir, P.C., State College, PA, for Defendants.

**REPORT AND RECOMMENDATION**

KAROLINE MEHALCHICK, United States Magistrate Judge

*1 *Pro se* plaintiff Robert D. Kline commenced this action on February 4, 2019, in the Mifflin County Court of Common Pleas, asserting claims against Florida-based defendants Advanced Insurance Underwriters, LLP (AIU), Jason Wyman, and Marilyn E. Morillo (collectively, "Defendants") for violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 (TCPA). (Doc. 1-2). After Defendants removed the action to federal court, the Court granted their motion to dismiss Kline's first amended complaint for lack of personal jurisdiction. (Doc. 2; Doc. 11). With the Court's permission, Kline filed a second amended complaint, which Defendants now move to dismiss, or for more specific pleadings or a transfer of venue. (Doc. 12; Doc. 13; Doc. 14). Despite two lapsed deadlines and a Court order directing him to respond to Defendants' motion and brief in support,[1] Kline has not filed a brief in opposition. (*See* Doc. 17).

For the following reasons, the Court recommends that Defendants' motion to dismiss (Doc. 14) be **GRANTED**, that Kline's second amended complaint (Doc. 12) be **DISMISSED WITHOUT PREJUDICE** to Kline's refiling his complaint in the Southern District of Florida, and that the Clerk of the Court be directed to **CLOSE** this case.

**I. Background and Procedural History**

In his first amended complaint, Kline alleged that he received several calls from a Pennsylvania area code both before and after he asked the callers, who identified themselves as agents of the Health Registration Center (the "Center"), to stop calling him. (Doc. 5, at 9-10). He knew the calls were made using an automatic telephone dialing system (ATDS) because when he answered, he heard silence and an electronic "blip" before connecting with a live caller – and when he called the numbers back, he was unable to reach anyone. (Doc. 5, at 12). In June 2017, Kline received an ATDS call from Erica, a purported agent of the Center, who transferred Kline to defendant Marylin Morillo, who attempted to sell Kline insurance. (Doc. 5, at 12). Kline's own research revealed that Morillo "was part of the organization with the other Defendants in this lawsuit." (Doc. 5, at 12).

Defendants moved to dismiss the amended complaint for lack of personal jurisdiction based on defendant Jason Wyman's affidavit in which he averred, *inter alia*, that all Defendants are Florida-based, and none of them ever directed any calls or business into the state of Pennsylvania. Because Kline provided no counter affidavit and instead relied on references to allegations in his unverified amended complaint, the motion to dismiss was granted pursuant to Rule 12(b)(2). (Doc. 11; Doc. 10, at 8 (citing *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984) ("A Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies."))). The undersigned's recommendation, which the District Judge adopted, noted that Kline's allegations did not appear to state a claim for relief as to some of his causes of action.

*2 In his second amended complaint, Kline alleges essentially the same set of facts. Beginning in April or May 2017, callers purporting to be agents of the Center began calling his personal cellphone, which was registered on the federal do-not-call registry. (Doc 12, at 10). Most of the calls originated from the same Pennsylvania area code as Kline's cellphone number, i.e., 507. (Doc. 12, at 10-11). When Kline answered, he heard a few seconds of "dead air" or silence, an electronic "blip," and then a live agent who would begin

Case 3:25-cv-01132-JKM    Document 19-10    Filed 01/16/26    Page 3 of 8
Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)
2020 WL 14028040

to discuss health insurance. (Doc. 12, at 11-12). The Center continued to call Kline even after he told its agents to stop calling him, and none of the agents could answer Kline's numerous inquiries about the Center's do-not-call policy. (Doc. 12, at 12-13). Kline's research revealed that the calls were originating from "spoof" numbers. (Doc. 12, at 13). In June 2017,[2] Kline received a call from Erica, an agent of the Center, originating from a number that Kline later verified to be a "spoof" number. (Doc. 12, at 13). Kline "answered [Erica's] questions relating to health insurance in sufficient detail that she transferred him to Defendant Morillo who indicated that she could sell insurance" to him. (Doc. 12, at 13). Through his own research, Kline discovered that Morillo "was part of the organization with the other Defendants in this lawsuit." (Doc. 12, at 13-14).

Kline asserts nine causes of action: (1) negligent violation of the TCPA's ATDS prohibition; (2) knowing and/or willful violation of the TCPA's ATDS prohibition; (3) negligent violation of the TCPA "Sales CALL/DNC" prohibition; (4) knowing and/or willful violation of the TCPA's "Sales CALL/DNC" prohibition; (5) negligent violation of the TCPA's "Do-Not-Call Policy" requirement; (6) knowing and/or willful violation of the TCPA's "Do-Not-Call Policy" requirement; (7) negligent violation of the TCPA's "Do-Not-Call List" requirement; (8) knowing and/or willful of the TCPA's "Do-Not-Call List" requirement; and (9) a state law trespass-to-chattels claim.

Kline seeks $500 for every negligent violation of the above statutes and regulations and $1,500 for every knowing or willful violation of the same. (Doc. 12, at 21). For his claims of trespasses to chattels, Kline seeks $1 for every sales call made to his cellular phone. (Doc. 12, at 21). Kline does not allege the specific date and time of every call for which he seeks damages but asserts that the exchange of discovery will reveal these details. (Doc. 12, at 21). Kline also seeks punitive damages in the amount of $100,000 to "deter others who may otherwise engage in similar willful illegal and deliberate tortuous [sic] conduct ...," prejudgment interest, and litigations costs. (Doc. 12, at 21).

**II. Discussion**
Defendants move to dismiss the second amended complaint for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure and failure to state a claim under Rule 12(b)(6). (Doc. 15, at 3-11). Alternatively, Defendants move for a more definite statement under Rule 12(e), or a transfer of venue to the United State District Court for the Southern District of Florida, Ft. Lauderdale Division, pursuant to 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406(a). (Doc. 15, at 11).

A. The TCPA
The Telephone Consumer Protection Act "was intended to combat, among other things, the proliferation of automated telemarketing calls (known as 'robocalls') to private residences, which Congress viewed as a nuisance and an invasion of privacy." Leyse v. Bank of Am. Nat. Ass'n, 804 F.3d 316, 322 (3d Cir. 2015). At issue here are subdivisions (b) and (c) of the Act. Subdivision (b) makes it unlawful to use an ATDS to call any cell phone number "other than a call made for emergency purposes or made with the prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). The statute provides for a private right of action that permits "a 'person or entity' [ ] [to] bring an action to enjoin violations of the statute and recover actual damages or $500 in statutory damages per violation." Leyse, 804 F.3d at 322 (quoting 47 U.S.C. § 227(b)(3)(A)-(B)). Willful or knowing violations may give rise to treble damages, "increas[ing] the amount of the award to an amount equal to not more than 3 times the amount available" for actual or statutory damages. (47 U.S.C. § 227(b)(3)).

*3 Subdivision (c) of the Act directs the Federal Communications Commission (FCC) to prescribe regulations pursuant to which the FCC implemented a national do-not-call registry and set forth a requirement that telemarketers institute procedures for maintaining lists of individuals who request not to receive calls. 47 U.S.C. § 227(c); *see* 47 C.F.R. § 64.1200(c)–(d).[3] These regulations make it unlawful to initiate a telephone solicitation to a residential telephone subscriber "who has registered his or her telephone number on the national do-not-call registry," or when the person or entity making the call failed to institute procedures for maintaining a do-not-call list. 47 C.F.R. § 64.1200(c)(2), (d). A "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation" of these regulations may bring an action to enjoin such violation and recover the greater of actual loss or $500 in statutory damages for each violation. 47 U.S.C. § 227(c)(5)(A)-(B). Subsection (c) also authorizes treble damages for willful or knowing violations of the regulations. 47 U.S.C. § 227(c)(5).

B. Personal Jurisdiction

Case 3:25-cv-01132-JKM     Document 19-10     Filed 01/16/26     Page 4 of 8

Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)
2020 WL 14028040

Rule 12(b)(2) authorizes a defendant to move to dismiss a complaint for lack of personal jurisdiction. Generally, courts "reviewing a motion to dismiss a case for lack of in personam jurisdiction must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992). If, however, the plaintiff's "allegations are contradicted by an opposing affidavit," the plaintiff "must present similar evidence in support of personal jurisdiction." *In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d 367, 381–382 (M.D. Pa. 2009). Under long-standing Third Circuit precedent, "at no point may a plaintiff rely on the bare pleadings alone in order to withstand" such a motion. *Patterson v. FBI*, 893 F.2d 595, 603–604 (3d Cir. 1990) (quoting *Time Share Vacation Club*, 735 F.2d 61) (internal quotation marks omitted). As such, "[g]eneral averments in an unverified complaint or response without the support of 'sworn affidavits or other competent evidence' are insufficient to establish jurisdictional facts." *Harris v. Trans Union, LLC*, 197 F. Supp. 2d 200, 203 (E.D. Pa. 2002) (quoting *Time Share Vacation Club*, 735 F.2d at 66, n.9) (internal quotation marks omitted). "Once [a] [Rule 12(b)(2)] motion is made, [the] plaintiff must respond with actual proofs, not mere allegations." *Patterson*, 893 F.2d at 603.

Generally, a district court exercises personal jurisdiction "to the extent allowed under the law of the forum state." *Allaham v. Naddaf*, 635 F. App'x 32, 37 (3d Cir. 2015) (internal quotation marks omitted) (citing Fed. R. Civ. P. 4(k)(1)(A) (providing for "personal jurisdiction over a defendant ... who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located")). Because the Pennsylvania long-arm statute "allows the exercise of personal jurisdiction to the full extent permitted by the Constitution," the standard for a federal court sitting in diversity in Pennsylvania is whether a defendant has "minimum contacts" with it such that the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks omitted); *see* 42 Pa.C.S.A. § 5322. "Having minimum contacts with another state provides 'fair warning' to a defendant that he or she may be subject to suit in that state." *Kehm Oil v. Texaco, Inc.*, 537 F.3d at 290, 299–300 (3d Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). As such, personal jurisdiction under the Due Process Clause depends upon "the relationship among the defendant[s], the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

**\*4** Two types of personal jurisdiction exist over non-resident defendants: general and specific. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007). General jurisdiction may be asserted when a non-resident defendant has maintained "systematic and continuous contacts with the forum state." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984)); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) ("A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State."). When subject to the general jurisdiction of a state, "that [defendant] can be called to answer any claim against [it], regardless of whether the subject matter of the cause of action has any connection to the forum." *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992).

On the other hand, "[s]pecific jurisdiction exists when the claim arises from or relates to [a defendant's] conduct purposely directed at the forum state." *Marten*, 499 F.3d at 296 (citing *Helicopteros*, 466 U.S. at 414-415 n.9). To determine whether specific jurisdiction over a defendant exists, courts must engage in a three-part inquiry. *O'Connor*, 496 F.3d at 317. First, a court must consider whether a defendant "purposefully directed [its] activities" at the forum state. *O'Connor*, 496 F.3d at 317 (quoting *Burger King*, 471 U.S. at 472). Second, "the litigation must 'arise out of or relate to' at least one of those activities." *O'Connor*, 496 F.3d at 317 (quoting *Helicopteros*, 466 U.S. at 414). Third, if the prior requirements are met, the court "may consider additional factors to ensure that exercising jurisdiction would be consistent with notions of 'fair play and substantial justice.' " *O'Connor*, 496 F.3d at 317 (quoting *Burger King*, 471 U.S. at 476).

Defendants move to dismiss Kline's claim for lack of personal jurisdiction given Defendants' Florida residences, AIU's principal place of business, and Wyman's affidavit. In his affidavit, Wyman avers that (1) he and defendant Morillo reside in Florida and have resided in Florida during all relevant times; (2) AIU is a limited liability company with a principal place of business located in Florida; (3) Wyman is a "member" of AIU, and Morillo was employed by AIU as a commercial lines manager from about 2013 to 2016; (4) none of AIU's officers, directors, or employees ever resided in

Case 3:25-cv-01132-JKM    Document 19-10    Filed 01/16/26    Page 5 of 8

Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)
2020 WL 14028040

Pennsylvania; (5) AIU's Board of Directors and shareholders have never conducted meetings in Pennsylvania; (6) AIU has not appointed an agent for service of process in Pennsylvania; (7) AIU has never conducted any business in Pennsylvania nor directed any advertising in publications directed primarily at Pennsylvania; (8) neither AIU nor anyone acting on its behalf ever directed any telephone calls into Pennsylvania for the purpose of soliciting insurance business or contracted with a telephone marketing company to make unsolicited sales calls into Pennsylvania; and (9) neither AIU nor anyone acting on its behalf ever made or directed anyone to make a telephone sales call to Kline at any time. (Doc. 4, at 2-3).

In recommending dismissal of Kline's first amended complaint, the Court noted that to overcome Wyman's affidavit, Kline was required to "respond with actual proofs, not mere allegations," and "at no point may [he] rely on the bare pleadings alone in order to withstand" a Rule 12(b)(2) motion. (Doc. 10, at 6) (quoting *Patterson*, 893 F.2d at 603 (internal quotation marks omitted)). Kline did not provide any proof in response to Defendants' motion to dismiss to first amended complaint, and he has failed to respond entirely to the instant motion. As such, Kline relies "on the bare pleadings alone," which is prohibited under Rule 12(b)(2) and related case law. *See, e.g., Turner v. Prince George's Cty. Pub. Sch.*, 694 F. App'x 64, 65 (3d Cir. 2017) (affirming Rule 12(b)(2) dismissal where the District Court "granted the [Rule 12(b)(2)] motion after [plaintiff] failed to respond for nearly five months" and "dismissed her complaint without prejudice" for failure "to produce any competent evidence to support personal jurisdiction").

*5 Even if the Court treated the second amended complaint as if it were an affidavit submitted in response to Defendants' motion, Kline still would not prevail. The requirement that the Court accept as "true all of the allegations in the complaint" in deciding a Rule 12(b)(2) motion no longer applies when "those allegations are contradicted by the defendants' affidavits." *Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 158 n.1 (3d Cir. 2012). Kline verified the second amended complaint, but a pleading can serve as an affidavit only to the extent the allegations therein are made upon person knowledge. *See* 10B Wright, Miller & Kane, Federal Practice and Procedure § 2738 (4th ed.) ("Although a verified pleading, like any pleading, may be presented to the court in a summary-judgment proceeding, it will not be accorded the probative force of an affidavit unless it meets the requirements of Rule 56(c)(4)."); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

Many of Kline's allegations are made upon information and belief or with reference to Kline's unspecified research. The non-conclusory allegations made upon personal knowledge are that the Center called Kline several times; on one call, Erica from the Center transferred Kline to defendant Morillo, who then tried to sell him insurance; and Kline was unable to reach anyone at the Center. There are no non-conclusory allegations that AIU, Morillo, or Wyman initiated any calls to Kline, and his attempts to tie the calls from the Center to Defendants are bare and unsupported. For example, Kline believes that "Defendants have [a] direct relationship with [the] Center and therefore have vicarious liability for the illegal, ultra vires activities that related to telemarketing directed toward [Kline]," but he provides no non-conclusory support for that belief and omits reference to the source from which he obtained that information, if any. (Doc. 12, at 13-14). Kline refers to research he conducted, but he does not specify what the research entailed or what he uncovered that led to his conclusions.

Accordingly, on record before the Court, there does not appear to be an adequate basis for invoking general or specific jurisdiction over Defendants. Regarding general jurisdiction, Kline does not specify the number of calls he allegedly received from Defendants to his mobile phone number. Even if Kline had pleaded the number of calls with specificity, there is no indication that the calls were of a continuous and systematic nature such that exercising jurisdiction over Defendants would comport with the demands of due process. *See, e.g., Abramson v. CWS Apartment Homes, LLC*, No. CV 16-426, 2016 WL 6236370, at *2 (W.D. Pa. Oct. 24, 2016) (finding no basis for general jurisdiction in TCPA claim against defendant with a Texas principal place of business and no other ties to Pennsylvania); *Hugo v. Galant*, No. CIV. A. 86-3776, 1987 WL 4810, at *1 (E.D. Pa. Apr. 29, 1987) ("[O]ne visit and a number of phone calls do not constitute the 'continuous and systematic' contacts necessary to justify general jurisdiction."). Significantly, the allegations are that *the Center* called Kline several times, one such occasion being when Kline was transferred to Morillo, not that Defendants called Kline several times.

It is true that that in TCPA cases, "courts generally find that *specific* personal jurisdiction exists when a defendant

Case 3:25-cv-01132-JKM     Document 19-10     Filed 01/16/26     Page 6 of 8

Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)
2020 WL 14028040

sends a message into the forum state by targeting a phone number in that forum." *Shelton v. Nat'l Gas & Elec., LLC*, No. CV 17-4063, 2019 WL 1506378, at *7 (E.D. Pa. Apr. 5, 2019) (emphasis added); *see also Abramson, LLC*, 2016 WL 6236370, at *4 ("District courts across the country have found purposeful direction based on allegations that a defendant sent its telemarketing call to a number bearing the state's area code."). This case, however, does not involve a defendant who directly initiated a call to a plaintiff in violation of the TCPA, and the conclusory assertions in the complaint, without any further response from Kline in opposition to the Rule 12(b)(2) motion, fall short of establishing that Morillo purposefully directed her conduct at Kline.

**\*6** In short, Kline has failed to meet his "ultimate burden ... to demonstrate the existence of jurisdiction by a preponderance of the evidence." *See LaSala v. Marfin Popular Bank Pub. Co.*, Ltd., 410 F. App'x 474, 476 (3d Cir. 2011). It is therefore recommended that Defendants' Rule 12(b)(2) motion to dismiss be granted and Kline's second amended complaint be dismissed for lack of personal jurisdiction.

### C. Motion to Dismiss or for a More Definite Statement

Because the Court lacks jurisdiction over this claim, the undersigned will not opine on the merits of Defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6) and motion for a more definite statement under Rule 12(e). Regarding the motion for a more definite statement, because this is Kline's third amended complaint, it does not appear that granting a Rule 12(e) motion would yield a different outcome.

### D. Motion to Transfer

Alternatively, Defendants move to transfer this case to the Southern District of Florida. Although the Court lacks personal jurisdiction over Defendants in Pennsylvania, it must consider whether transferring the instant action to another forum is a proper alternative to dismissal. If a district court determines that it lacks personal jurisdiction over an action, it shall either dismiss the action, or, "if it is in the interest of justice, transfer such action ... to any other such court in which the action ... could have been brought at the time it was filed." 28 U.S.C. § 163117; *see D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 110 (3d Cir. 2009) (directing the district court on remand to consider transfer pursuant to § 1631 where personal jurisdiction was lacking). Generally, transfer is the option of choice; however, this presumption may be rebutted under consideration of the following three factors: (1) whether transfer would unfairly benefit the proponent; (2) whether transfer would impose an unwarranted hardship on the objector; and (3) whether transfer would unduly burden the judicial system. *Pac. Employers Ins. Co. v. AXA Belgium S.A.*, 785 F. Supp. 2d 457, 475 (E.D. Pa. 2011) (citing *Britell v. United States*, 318 F.3d 70, 74 (1st Cir. 2003)). However, "[t]ransfer decisions fall to the discretion of the District Court," and "may involve undertaking some 'limited review of the merits' of the underlying claims. *United States v. Foy*, 803 F.3d 128, 137–38 (3d Cir. 2015) (citing *Phillips v. Seiter*, 173 F.3d 609, 611 (7th Cir. 1999)); *Sidari v. Caesar's Pocono Resorts*, 29 F. App'x 845, 847 (3d Cir. 2002). Indeed, "[e]ven though there is a presumption in favor of transfer ... if an action or appeal is fanciful or frivolous, it is in the interest of justice to dismiss it rather than to keep it on life support." *Patchen v. McGuire*, No. CIV.A. 11-5388, 2012 WL 4473233, at *14 (E.D. Pa. Sept. 27, 2012) (citing *Britell*, 318 F.3d at 74).

Upon consideration of these interests, the Court finds that transfer to another district would not be in the interest of justice, particularly given Kline's recent failure to comply with the Court's order directing him to file a brief in opposition. "A court is authorized to consider the consequences of transfer before deciding whether to transfer; that is implicit in the statute's grant of authority to make such a decision, and implies in turn that the court can take a peek at the merits, since whether or not the suit has any possible merit bears *significantly* on whether the court should transfer or dismiss it." *Phillips*, 173 F.3d at 610-11 (emphasis added) (citing *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 818 (1988)); *see also United States v. Holland*, No. 1:01-CR-195-06, 2016 WL 3387170, at *1 (M.D. Pa. June 20, 2016) ("[A]lthough a lack of jurisdiction prevents a court from considering the merits when deciding whether to dismiss the motion, the merits may inform a court's determination of whether the interest of justice warrants a transfer.") (internal citations omitted).

**\*7** The Court finds little merit in Kline's claims. His claims against Wyman in his capacity as an officer of AIU do not appear to be a cognizable theory of liability under the TCPA. Kline asserts that Wyman is *personally liable* "under the 'participation theory' of liability because Wyman is the controlling manager of [AIU]" (Doc. 12, at 7-8), but "a corporate officer is not liable under the TCPA under common law personal liability principles." *See KHS Corp. v. Singer Fin. Corp.*, 376 F. Supp. 3d 524, 530 (E.D. Pa. 2019) (citing *City Select Auto Sales, Inc. v. David*

Case 3:25-cv-01132-JKM   Document 19-10   Filed 01/16/26   Page 7 of 8

Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)
2020 WL 14028040

*Randall Assocs., Inc.*, 885 F.3d 154, 160 (3d Cir. 2018) ("We doubt as well, however, whether such common-law personal-participation liability is available against corporate officers under the TCPA.")). Kline has not sufficiently alleged that Wyman "directly participated in any unlawful conduct. Instead, [Kline]'s allegations against [Wyman] appear to be based solely on Wyman's position as [a member or officer] of [AIU]." See *Zelma v. Penn LLC*, No. CV 19-8725, 2020 WL 278763, at *4 (D.N.J. Jan. 17, 2020); *see also Bartkowski v. Foni*, No. CIV. A. 07-1018, 2007 WL 2728844, at *3 (E.D. Pa. Sept. 17, 2007) ("It is well-established that personal jurisdiction 'does not exist simply because [defendants] are agents or employees of organizations which presumably are amenable to jurisdiction in' a particular forum." (quoting *Nicholas v. Saul Stone & Co.*, LLC, 224 F.3d 179, 184 (3d Cir. 2000))); *Cunningham v. Capital Advance Sols., LLC*, No. CV 17-13050, 2018 WL 6061405, at *5 (D.N.J. Nov. 20, 2018) ("[T]o the extent that the TCPA provides a basis for filing suit against a corporate officer in that officer's individual capacity, Plaintiff's allegations in support thereof fail to demonstrate that the Individual Defendants were more than 'tangentially involved' with the complained of telemarketing calls."). The same is true of Morillo, to the extent Kline has asserted the she is liable under a participation theory for being a "conspiratorial agent who received the phone calls from the lead generation agent." (Doc. 12, at 9).

Moreover, it is not clear that Kline has alleged an agency relationship giving rise to vicarious liability. One of his claims appears to be that Morillo and Wyman, through AIU, conspired together to create a "spoof" or "sham" entity to make calls in violation of the TCPA. Kline apparently believes that because the Center handed off one call to Morillo, who then tried to sell Kline health insurance, all Defendants therefore controlled the Center and are therefore vicariously liable under agency principles.[4] Given the slim allegations and conclusory references to unknown sources in Kline's complaint, this claim has dubious merit. *See, e.g., Kline v. Elite Med. Labs., Inc.*, No. 1:19-CV-1043, 2019 WL 6828590, at *6 (M.D. Pa. Dec. 13, 2019) ("There is no allegation that Defendant Arriviello directed the callers to call Plaintiff on his behalf, or that Defendant Arriviello caused the callers to reasonably believe that they had the authority to call Plaintiff on Defendant Arriviello's behalf.... Plaintiff has not alleged enough facts to show that the callers were agents of Defendant."); *cf. Hartley-Culp v. Green Tree Servicing, LLC*, 52 F. Supp. 3d 700, 704 (M.D. Pa. 2014) (vicarious-liability TCPA claim stated against Fannie Mae where the direct caller's recorded messages indicated they were sent "on behalf of Fannie Mae").

Based on the above, the Court finds it is not in the interest of justice to transfer this matter to the District Court in Florida.

### E. Leave to Amend

Finally, although The Third Circuit has instructed that district courts generally must permit a curative amendment if a complaint filed *pro se* is vulnerable to dismissal for failure to state a claim, amendment is not required if it would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Despite being on notice of the defects in his complaints, Kline has failed to address or correct them with each successive filing, and in the end, has failed to file any response to Defendants' present motion to dismiss. As such, the Court finds that further leave to amend would be futile.

## III. Recommendation

Based on the foregoing, it is recommended that:

1. Defendants' motion to dismiss (Doc. 14) Kline's second amended complaint (Doc. 12) be **GRANTED** for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2);

**\*8**  2. Kline's second amended complaint be **DISMISSED WITH PREJUDICE** and without leave to amend; and

3. The Clerk of the Court be directed to **CLOSE** this case.

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **June 23, 2020**.

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all

Case 3:25-cv-01132-JKM   Document 19-10   Filed 01/16/26   Page 8 of 8

Kline v. Advanced Ins. Underwriters, LLP, Not Reported in Fed. Supp. (2020)
2020 WL 14028040

parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 14028040

Footnotes

1   Throughout their brief in support, Defendants repeatedly incorporate by reference arguments made in their previous filings in this matter. Counsel is reminded that Local Rule 7.8 precludes such incorporation, specifically stating "No brief may incorporate by reference all or any portion of any other brief."

2   Kline alleges this call was the first of the many he received from the Center during which he had sufficient cellular reception to engage in a meaningful inquiry. (Doc. 12, at 12).

3   The procedures instituted require that the person or entity maintain "a written policy, available upon demand, for maintaining a do not-call-list" and record a subscriber's do-not-call "request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made." 47 C.F.R. § 64.1200(d)(1), (3).

4   In additional to alleging that Defendants actively participated in specific TCPA violations, Kline also alleges that Defendants are personally liable for failing to "supervise agents and subordinates." (Doc. 12, at 7).

---

**End of Document**  © 2026 Thomson Reuters. No claim to original U.S. Government Works.